Turley, J.
delivered the opinion of the court.
This bill is filed on behalf of the complainants, to restrain the corporation of Nashville, from issuing bonds for the purpose of raising money to provide for the payment of twenty thousand shares of stock, subscribed by the corporation to the Nashville and Chattanooga Railroad Company.
The facts necessary for the proper understanding of this case are as follows: On the Tlth day of December, 1845, the Legislature of the State of Tennessee, passed an act to incorporate a Railroad, leading from Nashville on the Cumberland River, to Chattanooga on the Tennessee River, and by the 17th section authorized “any State, or any citizen, corporation or company to subscribe for and hold stock in said company with all the rights and subject to all the liabilities of any other stockholder,”
Under the provisions of this act, the Mayor and Aldermen of the corporation of Nashville adopted a resolution, authorizing the Mayor to subscribe for twenty thousand shares of the capital stock of the Nashville and Chattanooga Railroad; which subscription, however, had not been made before the meeting of the Legislature of the State, at Nashville, on the first Monday in October, 1847. During the session of this Legislature, a bill was introduced, and which became a law on the 8th day of December, *259 1847, by which, after stating by way of preamble, the fact that subscription had been so ordered, but not made, and that it was considered necessary that further power should be extended to the corporate authorities of said town, to enable them to pay the calls upon said stock, provisión is made “that the Town of Nashville be, and it is hereby authorized, through its Mayor and Aldermen, and by the subscription of the Mayor on the books of the Nashville and Chattanooga Railroad Company, to subscribe for twenty thousand shares of the capital stock of said company;' — and that they be further authorized to raise money on loan, by pledging the faith of the corporation, by pledging a portion of its taxes by mortgage or otherwise as to them may seem best, to an amount not exceeding' what may be demanded for the calls upon the stock aforesaid, and said loan may be created for such length of time and payable in such manner as the said Mayor and Aldermen may deem best. And that they be further authorized, if to them it shall seem best, instead of making loans as aforesaid, for the whole amount of said calls or any part thereof, to issue the bonds of the corporation, under its corporate seal, to be signed by the Mayor, and countersigned by its Recorder, for the whole or any part of said calls, which may be made from time to time by said Railroad Company, on said stock; Provided, That the bonds so to be issued shall be in sums, not less than live hundred dollars each, and that they shall not be on any greater rate of interest than six pér cent, per annum, and shall not be payable at a greater distance of time, from their respective dates than thirty years.”
It is contended on the part of the complainants, a portion of the Corporators of Nashville, that these acts of the Legislature of the State, of 1845 and ’47, conferred no *260 power upon the corporation of Nashville, to subscribe for this stock, no power to borrow money upon an hypothe-cation of its taxes, or of issuing bonds for that purpose, in order to pay the calls upon such stock, as the same should be made from time to time by the Railroad Company, because said acts, so far as they purport to create such powers in the corporation, are unconstitutional and void. That the scheme is visionary, and that if the corporation of Nashville be permitted to involve the Town in a subscription thereto of five hundred thousand dollars, irreparable mischief will be done to its inhabitants, the property holders, who will become responsible for the payment of the amount with all accruing interest thereon.
This case is important, from the' magnitude of the interest involved, and the number of persons to be affected by it, and it therefore has merited, and has received at our hands, the most deliberate and patient investigation that we are capable of, and in the conclusions to which we have arrived, we feel confident that we have not been biased by any personal interest or feeling in relation to it, because we are conscious that none such exists.
As to the feasibility of this scheme of a Railroad from Nashville to Chattanooga, and its usefulness, if feasible, it is not to be expected but that there shall be a contradiction of opinion; it always has, it always will be so, in relation to improvements of this and a like character. For while the sanguine and hopeful anticipator is ever ready to look forward with exaggerated expectation of great and beneficial results from such schemes, the saturnine and cautious are equally ready to view them, with exaggerated fears of involvement and loss. It is best that it should be so, for generally the fire of the one, and the caution of the other, will be mutually operative, *261 producing an action more to be relied on, than would be that which is the result of either of them singly. But in relation to this difference of opinion, this court can take no action, it can form no ingredient to be taken into consideration by us in discussing this case. It is and can only be operative in the counsels of the corporation — ‘there, it no doubt has been heard and attended to, and the result has been the determination, on the part of the corporation to subscribe for the stock — whether this act is to result to its injury or benefit, time alone can tell; it is not a matter for our consideration.
In the argumentation of this case, the court might take an excursive range in the review and origin of corporations, the power of governments to create them, the powers that may be extended to them, the manner in which they are to be construed and executed, but we do not deem it necessary so to do ; for in our opinion the principles regulating and controlling the questions debated in this case, are few, simple in their construction and of very ready access. In the State of Tennessee, a corporation is the creature of the legislative department of the government; it exists solely and alone by virtue of its act of incorporation, and it can exercise no powers but such as are expressly granted to it and such as are the result of necessary and proper implication. This principle necessarily follows from the relation a corporation occupies to the State — it is not, as has been justly remarked in the argument of the case, a regnum in regno, but it is a thing created by legislative enactment, to which certain powers of action are given for trade, for manufacturing, for municipal government, for education, or for any other legitimate purpose, for which a combination of capital, or of intellect, or of numbers may be desired. Its whole action must necessarily *262 be the result of the authority conferred upon it, which may be limited or extended as the Legislature, in its wisdom, may think proper to strengthen or weaken it, by delegating or withholding those powers which are inherent in the State or are only to be exercised by its individual citizens, without a charter of incorporation. The powers of corporations being exercised then under delegated authority, are to be strictly construed. So are all delegated powers, whether they be of a private or public character, and if any one thinks that this principle is of modern discovery, he is greatly mistaken. It was as well known to my Lord Coke and his successors in the common law, as it has ever been to any expounder of the constitution of the United States, and the principle is as well, if not better established, by the decisions of courts of England, as it has been by the political debates at the hustings and in Congress, or by the Supreme Court of the United States.
But this strict construction has never confined the execution of the power to its word and letter, but every thing necessary and proper for carrying into execution the granted power, has always been conceded by the strictest constructionist. I do not design to enter into an investigation of what are to be considered necessary and proper means, both because, it would be interminable and because it is not necessary for the case under consideration. In fact, such discussion cannot be profitable in a court of justice, except in relation to a particular act done, and which is claimed to be a necessary and proper act for carrying into execution a given power.
This much, we have deemed it proper to say, in relation to the construction of powers; not because the acts designed by the corporation of Nashville, and which are *263 by this bill sought to be enjoined, viz: the subscription of stock to the Nashville and Chattanooga Railroad, or the borrowing of money upon the faith of its taxes ox-bonds, is the exercise of an implied power, (on the contrary, the power to do so is expressly given) but because the question has been much argued, and we are not willing that it should.be supposed, that we have overlooked it.
A corporation being the creature of the Legislature, it necessarily follows, that unless its creation involves a contract and vested rights on the part of the corporation, it is at all times subject to legislative control, and may have its privileges and immunities enlarged or diminished from time to time, as the public good may require, and at the discretion of the Legislature, and this is particularly the case with municipal corporations, created for the ordering and governing of towns and cities. The delegation of higher and greater powers may be required at one time than another, and they may, therefore, very properly, be expanded or contracted at pleasure, according to the necessity of the case.
This power of the legislative department of the State to create corporations, does not rest alone upon an implication arising out of sovereignty in legislation, though that is sufficient to support it, as was held by this court in the case of Hope vs. Deaderick, 8 Hum. Rep., vol. 1, but is supported by express grant in our constitution.
The 7th section of the 11th article, provides that “the Legislature shall have power to grant such charters of incorporation as they may deem expedient for the public good.”
From this view of the case then, we leai-n that the Legislature of the State had the power to create the corporation of the Town of Nashville, with such powers *264 for the good government of the town, and for the promotion of the health, comfort and prosperity of its citizens, as the Legislature might deem it expedient to entrust to its board of Mayor and Aldermen, and that it might from time to time, enlarge those powers at discretion.
The Town of Nashville was incorporated by an act of the Legislature, passed the llthday of September, 1806, with such powers delegated to the corporation as were then deemed meet and proper for its condition: what these were, it is not necessary to enquire, as it is not contended that the power to take stock in this Railroad, and raise money for the payment thereof by bond or hypothecation of taxes, arises out of them. But we have seen that the powers of this corporation have been extended so as to embrace this purpose, by the acts of 1845 and ’47.
The act of 1845, merely authorized the corporation to take stock in the Railroad, without giving power to raise the money for its payment. We think that there is nothing-unconstitutional in this provision of the statute. If the corporation had money, as it might well have, there can be no good reason why it should not be permitted to vest it in such stocks as might be supposed would be profitable — individuals so vest their money, and why should not a corporation be permitted to do so? It has been the constant practice to permit private corporations to vest their money in stocks; why may not a public corporation be likewise authorized to do so? There is no reason against it. It is no argument against it, to say that such investment is not a corporate purpose — why is it not a corporate purpose ? If a corporation have a surplus fund, is it not a corporate purpose to have it vested to the best advantage? It is not for the benefit of the corporation, and therefore, a corporate purpose, that this fund should *265 be securely vested, and at the best profit. If it be, why may it not be vested in Railroad stock, if the corporate authorities think it best? And why may not the Legislature enlarge its powers to enable it to do this, if by strict construction it be held not to have such power without? In our judgment it may, and under this statute we would be constrained to hold, that the corporate authorities of the Town of Nashville had the power to subscribe the stock in the Railroad, and to execute its notes for the payment thereof; as the power to contract, necessarily implies the power to execute the commercial evidences thereof. Union Bank vs. Jacobs, 7th Hum. And upon a bill to enjoin the corporation from subscribing for such stock and executing its notes for the payment, we could not and would not enquire whether the corporation had the money to take up these notes, or whether when they fell due, the amount would have to be raised by taxation or borrowing.
But the act of 1847 goes a step further than the act of 1845, and in addition to the power then given to subscribe for the stock, authorizes the corporation to borrow money for that purpose, upon the faith of the corporation, by hypothecating its taxes, or if to them it shall seem best to issue bonds of the corporation, for the whole, or any part thereof.
Now it is contended that this statute authorizes an appropriation, by taxes, for this subscription of stock, and that this Railroad is not a corporation purpose, and that therefore, the Legislature cannot under the provisions of the 29th sec. oí the 2nd article of our constitution authorize the corporation of Nashville to levy and collect taxes for the payment of liabilities created by this subscription.
*266 This presents a question not entirely free from difficulty and is, indeed, the only one worthy of serious consideration in the case.
The 29th section of the 2nd article of our constitution provides, that “the General Assembly shall have power <to authorize the several counties and incorporated towns in the State, to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law, and all property shall be taxed according to its value, upon the principles established in regard to State taxation.”
The reason why this clause was embraced in our constitution, those contemporaneous with its formation, know to have been, that doubts had been suggested by the’ highest judicial tribunal of the State, as to whether the taxing power could be delegated by the Legislature to the counties, and to the incorporated towns, and the clause was intended to remove these doubts. It ■ does nothing more, however, in enlarging the powers of the Legislature, than, it is believed, it possessed before upon this subject, and nothing more in restricting the exercise of the power on the part of the counties and corporate towns, to taxation for county and corporate purposes, than existed before. But be this as it may, we think that the Legislature, most clearly, has no power to delegate to a county or corporate town the power of levying taxes for any other than county or corporation purposes: And that if this act of 1347 is to be considered as an act. conferring on the corporation of Nashville the power to tax its corporators for the purpose of paying for this subscription to the stock of' the Nashville and Chattanooga Railroad; and that the erection of said *267 road is not a corporate purpose of the town of Nashville, •then the act is unconstitutional and void.
In discussing this statute, these questions are presented:
1. Does the act authorize the corporation to levy a tax for the purpose of paying the subscription of the stock?
2. Is the erection of the road a corporate purpose of the town of Nashville ?
We have seen that the statute contemplates the raising the money for this purpose, in one of two ways. First, By borrowing money on the faith of the corporation, and by hypothecating the corporation taxes. Second, By issuing bonds for the whole or any part of said stock, as calls may be made, from time to time, by the Railroad Company.
If the first mode of raising the money be resorted to, it would be the fair construction that it was to be raised by taxation; for it would be borrowed upon the faith of the corporation, and the corporation taxes would be pledged for its payment. If the second should be resorted to, it would not be certain that the means were to be'raised by taxation, for bonds are directed to be executed, these bonds may or may not have to be met by taxation; if they are paid without taxation, the question as to .the constitutionality of the law would not arise. This will show how difficult it is for us to determine the question of constitutionality of the act upon this branch of the subject. In order to hold it unconstitutional, .we must assume, not only that an illegal power to tax is created by it, but also that the corporation is about to exercise it by creating a debt which must necessarily be paid by taxation. Now, however probable we might deem this to be, it would be found very difficult to make it a legal presumption, so as to give relief by injunction, instead' *268 of compelling tlie dissatisfied corporators to wait until there should be an attempt to levy the illegal tax.
But on account of the importance of the interest in controversy, and the desire to have this case adjudged upon its essential merits, we have thought proper not to dismiss the bill upon this proposition alone, without discussing the second question in relation to the statute.
2. Is the making of the road from Nashville to Chattanooga, a corporation purpose of the town of Nashville? What is a corporation purpose of the town of Nashville ? General definitions are always difficult to be given with precision and accuracy, especially where they have to cover as extensive ground as that embraced by the expression, corporation purposes. I shall not, therefore, attempt to specify what are corporation purposes of the city of Nashville: they are or may be made to be as numerous and diversified, as may be found requisite by experience, to promote the peace, health, comfort, and prosperity of its corporators, and anything which promotes these things, is or maybe constituted a legitimate corporate purpose. Perhaps I might divide corporate purposes into two classes, those which are direct, and those which are indirect. A direct corporate purpose might be styled to be one, which in its direct and immediate consequences, operates upon the interests of the corporation. Such would be all police regulations for the government of the town, the promotion of good order, the protection of its citizens from the lawless, the suppression of vice, the opening and preservation of highways, streets, and alleys, the erection of market-houses and hospitals, supplying the town with water, &c. An indirect corporate purpose, might be styled to be one which does not, in its direct and immediate consequences operate upon the corporators, *269 but the beneficial effects of which are to be experienced in a remoter degree, and which have to be traced to their source before they can be duly comprehended and appreciated. Such are all facilities of panals, roads, the improvements of rivers, by which their navigable use is extended, by all which the commercial interest of a town is increased and expanded, by reason of the increased facilities of communication, thus furnished, by means of which the wealth of its population, individually and collectively is increased, with a consequent increase of the comforts and enjoyments of life. It is true that these improvements must have some connection with the corporate town, claiming them as corporate purposes, more direct than that which would result from the general increased prosperity of the country by reason of such improvements, made without a direct reference to, or in direct connection with the town. That is, the improvement claimed to be a corporate purpose, of the character under discussion, must have such relation to the town, as to be the medium, through which this prosperity is attained. It must begin or terminate at the town, or pass through or so near it as to be capable of effecting its direct interests. It would seem to be an incontrovertible truth, that a corporate town is deeply interested in the making of any road, or other means of transportation and travel, whereby the facilities of its commerce are increased; and if it be so interested, why shall it not become a corporation purpose, to have them made? It would really seem almost useless to argue in favor of it. Is there any thing illegal in it ? Is there anything against good morals in it ? Is there anything against public- good in it ? Surely not. A town is situated ten miles from a navigable stream; it is obvious that it must be a matter *270 of great importance to tbe town, its commerce, and general prosperity, to have a Railroad or McAdamized road to this river. It concerns no one else but this town, and no one else will make it. Shall it not become a corporation purpose of this town, to make it, if it be able ? Surely no one will deny but that it may. Distance cannot change the principle; if it can become a corporation purpose to make the road ten miles, so it may, if like reason exist, and there be like ability to make the road, twenty, thirty, or any number of miles; there being no limit, save the extent of the ability of the corporation, and the discretion of the Legislature in granting it the power.
If a corporation may make the road, may-it not join with others to make it? If the undertaking be too expensive to be carried into execution by the corporation itself, or if others be desirous of uniting with it for the effectuating of the design, why may they 'not unite? Again, it may be asked, is there any thing wrong in this? Is there any thing against the public good in this ? Is there any thing against law in this ? Surely not. And if the majority of the corporators are desirous of doing this, and the Legislature will grant them the privilege of doing it — upon what principle shall the minority interfere and prevent it? Minorities are protected against the illegal acts of majorities, but they must submit to those which are legal.
We again say, that of the wisdom of this scheme of uniting Nashville and Chattanooga by Railroad, we have nothing to say: we are not judges of it: the consequences of the event are in the womb of time, they may be highly beneficial to the town, or they may not; this cannot effect the judicial determination of this case.
If the making of this road can be considered a corpora *271 tion purpose, there is no pretence for holding the act of 1847, which authorizes the corporation of Nashville to pay for its subscription to the road, by a loan, effected upon its credit, and a mortgage of its taxes, or by the issuance of the bonds for the same purpose, to be unconstitutional. And we are not able to comprehend, why the making of this road should not be a corporate purpose of the town of Nashville, as well as the making a road running from the square to the water works above the town. The only distinction is, that the one is longer than the other, and will cost more money; but this, as to principle, is a distinction, and not a difference.
In this view of the case, we are sustained by the decision of the Supreme Court of Virginia, in the case of Goddin vs. Crump, 8th Leigh’s Rep., 120, and by the decision of the Supreme Court of Connecticut, in the case of the City of Bridgeport vs. Housatonic Railroad Company, 15th Conn. Rep., 475, in both of which cases, the questions presented for the consideration of the court, were the same in principle as those discussed in this case, and received the same determination.
We then hold, that the Legislature of Tennessee had the constitutional power to authorize the corporation of Nashville to take stock in the Nashville and.Chattanooga Railroad. That the making of this road is a legitimate-corporate purpose of the corporation, and that it is legally authorized to pay for its subscription to the stock of said road, in either of the modes pointed out by the act of 1847, and therefore affirm the decree of the Chancellor, and dismiss the bill with costs.